ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. SWILLING.†

(Court of Civil Appeals of Texas. Texarkana. Jan. 27, 1912. Rehearing Denied Feb. 8, 1912.)

1. MASTER AND SERVANT (§ 288*)—INJURIES —ASSUMPTION OF RISK—EVIDENCE.

In an action by a brakeman injured by catching his foot in rails piled near the track, evidence *held* to raise a question for the jury as to whether he knew of the presence of the rails, and assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

2. DAMAGES (§ 216*)—INSTRUCTIONS.

In an action by an injured servant, an instruction that the jury should award damages in consideration of the nature and extent of the injuries and physical and mental pain suffered and which may be suffered, and the servant's diminished earning power, unless he was guilty of contributory negligence, in which case damages must be proportionately reduced, did not direct double compensation for the same loss.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 216.*]

3. MASTER AND SERVANT (§ 295*)—INJURIES— ACTIONS—INSTRUCTIONS.

In an action by an injured servant, the question of assumption of risk is properly excluded from an instruction dealing wholly with the measure of damages.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 295.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action for personal injuries, where the fact that plaintiff's foot had been injured was not controverted, a charge that if the foot had entirely recovered, and was not now impaired, there could be no recovery for diminished earning power, was not upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 194.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by R. E. Swilling against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee was injured while working for appellant company in the capacity of head brakeman on one of its freight trains. He received the injury between 3 and 4 o'clock in the morning at Denman switch or spur, a side track on appellant's line of road. Denman switch is between Bullard and Mt. Selman. The freight train leaving Tyler was composed of refrigerator cars, among others. At Bullard some of the refrigerator cars were put out to a fruit shed, and three were also cut out of the train and put ahead of the engine for the purpose of being pushed ahead of the engine, one to Denman switch and two to Mt. Selman. When the train arrived at Denman switch, it stopped on the main line, and appellee cut off the two farthest cars in front of the engine, and then gave a signal for the engine to move backward in the direction it had come, so that the switch from the main line to the siding could be thrown. It was intended to put the car just ahead of the engine on the siding and leave it there. It was appellee's duty to cut the car from the engine. After the switch was lined up, the engine started on the side track pushing the car. Appellee attempted to "grab" the handholds of the rear end of the car in front of the engine in order to cut the car from the engine, and, as he did so, his right foot was caught, or became wedged between some rails lying on the side of the track. His hold pulled loose. He was struck by the pilot beam of the engine, and knocked down, sustaining the injuries of which he complains. The night was dark. Appellee had never switched cars or been called upon to perform any of the duties of his position at or upon this side track prior to the injury, and he did not know anything about the condition or situation of the tracks there at the siding. It appears that appellant had its steel gang taking up light rails on the main line and replacing them with new and heavier ones. The old rails as taken out were piled along certain points of the main line, and at certain sidings, to be later moved away. The size of the piles does not appear. The pile of rails where appellee was injured was located about two feet from the side of the track. It does not appear how long they had been there.

The defense of the appellant to the alleged negligence, besides general denial, was contributory negligence and assumed risk. All issues of fact were resolved by the verdict of the jury in appellee's favor.

Marsh & McIlwaine, E. B. Perkins, and Daniel Upthegrove, for appellant. Lasseter & McIlwaine, for appellee.

LEVY, J. (after stating the facts as above). [1] The first and second assignments of error complain of the overruling of the motion for new trial upon the ground that the verdict of the jury was contrary to the evidence. In the proposition appellant contends that the only reasonable conclusion which can be drawn from the evidence was that appellee knew, or must have necessarily known, that rails were lying by the side of the track at Denman switch, which made it dangerous for him to work at that place, and that a person of ordinary prudence under like circumstances would not

---

have done so, and hence that appellee assumed the risk. It appears that appellant had been changing the rails upon its line between Tyler and Lufkin by taking out the lighter rails, and replacing them with heavier ones. The old rails as they were taken out were piled along the main line and certain other points, and from there were to be later removed. On several occasions just prior to the injury appellee was a member of the train crew on a work train that was used to pick up the old rails' that had been just previously taken out of the track. In this respect appellee testifies: "I knew they had been changing rails down about Lufkin. I did not know they had been changing the rails at places other than Lufkin. I was not acquainted with the road and could not tell. I had never used the siding, and did not know anything about it. I had gone up and down the road for at least a dozen or 15 trips. I am asked if I did not know they had been changing the rails from 56-pound rails to 75-pound rails. I did know of the changing, but not what the weight was of the rails. I did not know they had been changing the rails there at this point. I remember there had been gangs changing rails a few miles out of Lufkin, those steel gangs were going from Lufkin. I do not know whether or not those steel gangs worked both ways. I did not know that rails were lying along the track at Denman spur. I had seen some few gangs at one or two stations between Tyler and Lufkin at other points than Denman. I will say that I knew that all along there at points other than Denman switch between Tyler and Lufkin there were rails lying along the track. I had seen rails at other stations. I did not know anything about this point." Appellant proved by the engineer that "they were taking up the 56-pound rails and putting 75-pound rails in place of them. I had a conversation with Mr. Swilling (appellee) respecting the rails being along the track there. That was at Goodson, a little spur just north of Flint, about an hour and a half before he got hurt. His lamp went out, and he came up to the engine and asked the fireman for a match. He did not have any, and neither did I. We told him all we could do was to give him a torch. He lit his lamp. I said: 'You want to be careful about getting off down here because there is rails all along the track, and you are liable to fall down on them.' I don't think he made any reply. That was on the same morning the accident occurred. This was at Goodson, about 10 miles from Denman." Appellee in respect to knowledge of the rails being at Denman spur further testified: "That was my first occasion to use the track. I didn't know anything about how the tracks were fixed along there. None of the company employés, nor people and crews I had worked with, had given me any notice as to how the tracks was fixed along there at

Denman spur." The injury occurred between 3 and 4 o'clock in the morning. The night was dark. While it appears that appellee had the experience of nine years in the railway service, it further appears that he had only been at work on this branch line for "between 12 and 15 round trips" before the injury. The size of the piles of iron at the point of injury or elsewhere does not appear in the evidence, nor does it appear how long the pile had been there at the point of injury. It only appears that a pile of rails was lying on the outside of the spur track at· Denman switch about two feet from the tracks. The foregoing statements present substantially all the facts on the point made. The conclusion could reasonably be drawn that appellant was by means of steel gangs at work changing the rails along its track, and that as fast as taken out they were being piled along the track at convenient places for removal therefrom later on, and that appellee knew that such work was being done, and in that manner. But there is no testimony showing nor tending to show that appellee knew, or had ever been informed by any one, that there was a pile of rails near the switchstand at Denman switch. His testimony was to the effect that, while he knew the steel gangs were at work changing rails on the line and piling them as taken out, he did not know that the work of changing and piling the rails had progressed to the point of Denman switch. The fact that he had made "between 12 and 15 round trips" over the line as a brakeman on the train does not necessarily contradict his statement, nor tend to show that he knew the pile was there at the point of injury, for the evidence does not show that the pile was there at the time of the trips. The evidence does not show when the pile of rails was put at the place of injury. It is true the engineer testified that he told appellee that rails were piled along the track at Goodson, a distance only of 10 miles from Denman switch. This information might be sufficient to warn appellee in connection with his knowledge that the company was changing the rails on all the line, that the point of injury was likely changed, and in the usual course of work there would likely be a pile of rails somewhere by the track. It would not, though, be conclusive that appellee knew, or must necessarily have known, that there was a pile of rails at or near the switchstand at Denman switch, because he had been informed that there were piles of rails at Goodson. If it could reasonably be concluded that appellee, in fact, did not know the pile of rails was at the point of injury, and had not been told it was—and it could be, we think—then it must further be considered whether he must necessarily have known of it after he got on the ground and before he "grabbed" the car. The size of the pile of rails does not appear, but it

is stated only that there was a pile of rails about two feet from the track. It appears affirmatively that the night was dark. In the absence of proof, as here, that the size of the pile of rails or manner of piling was such that a person on a dark night, while in the performance of the work of brakeman, must necessarily have seen or known of the same by reasonable prudence in his work, we would not be warranted in saying, as a matter of law, as against appellee's denial of having seen the pile at all, that he must necessarily have known of the pile of rails being there at the time of his injury. The court having fully submitted this defense to the jury, and the conclusion arrived at by the jury being amply sustained by the testimony, their finding will be sustained. The assignments are overruled.

· [2, 3] By the third assignment the court's charge on the measure of damages is assailed upon the two grounds: (1) That it tended to mislead or confuse the jury into allowing the assessment of double damages; and (2) that it excluded from the consideration of the jury the defense of assumed risk. The charge is: "Now, remembering the foregoing instructions, if you shall find that plaintiff was injured on the occasion in question, and that the defendant is liable therefor, then you will take into consideration the nature, character, and extent of the injuries, if any, he received on the occasion in question, such physical pain, if any, and mental anguish, if any, as the evidence may show he suffered or will in the future suffer, as the direct and proximate result of such injuries, if any you find he received on the occasion in question; such diminution, if any, of the ability of the plaintiff to labor and earn money as you may find the evidence shows, if you find it does show any diminution; and therefrom you will ascertain and determine the amount of cash money that will, if paid now, fairly and reasonably compensate him therefor, and make such sum the amount of your verdict, unless you find that the plaintiff was guilty of contributory negligence, as hereinbefore explained and charged upon, in which event you will diminish the amount of damages, if any you find, in proportion to the amount of negligence, if any, attributable to him, and make such diminished sum the amount of your verdict." The language of the charge by a reasonable intendment would be construed as directing the jury to take into consideration all the elements stated in arriving at the quantum of damages, and would not, we think, mislead a reasonably intelligent jury into allowing compensation twice for the same loss. The second objection cannot be sustained, because the charge bears solely upon the amount of damages to be awarded, and not upon the question of liability in the first instance, and the jury

would reasonably have so understood. The main charge authorized a verdict for appellant if it was not negligence to pile the rails by the switch at Denman, and it was not error to refuse the special charge complained of in the fourth assignment.

[4] The court instructed the jury that appellee could not recover for his alleged claim of partial paralysis of the right leg "if the plaintiff has not shown by a preponderance of the evidence that his leg is partially paralyzed," and, further, that he could not recover anything for alleged diminution of earning capacity in the future by reason of any injury to the foot if the jury should find that the foot "has entirely recovered and is not now impaired." The objection is that it was a charge on the weight of evidence. We do not find any conflict in the evidence as to the physical fact that appellee's foot was injured, but only as to the extent and permanency of the injury. The fifth assignment is therefore overruled, as being without injury.

The judgment was ordered affirmed.